

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-25-2005

# Ayefou v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3486

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ayefou v. Atty Gen USA" (2005). *2005 Decisions.* Paper 203.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/203

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3486

_____

AFOUA AMETOWOYO AYEFOU,
                                        Petitioner,

vs.

ALBERTO R. GONZALES,[1]
Attorney General of the United States,
                                        Respondent.

_____

On Petition for Review of an Order of
the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA No. A95-362-737)

_____

Argued November 7, 2005

_____

Before: ROTH, FUENTES, and GARTH, Circuit Judges

(Opinion Filed: November 25, 2005)

_____

[1] Attorney General Alberto Gonzales has been substituted for former Attorney General John Ashcroft, the original respondent in this case, pursuant to FED. R. APP. P. 43(c).

1

Derek W. Gray   **[ARGUED]**
Steel, Rudnick & Ruben
1608 Walnut Street
Suite 1500
Philadelphia, PA 19103
        *Counsel for Petitioner*

Peter D. Keisler
Anh-Thu P. Mai   **[ARGUED]**
Mary Jane Candaux
Jacqueline R. Dryden
William C. Peachey
Mark C. Walters
Linda S. Wernery
Office of Immigration Litigation
United States Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT

Garth, <u>Circuit</u> <u>Judge</u>:

Afoua Ametowoyo Ayefou ("Ms. Ayefou") challenges a decision of the Board of Immigration Appeals ("BIA") affirming the denial by an Immigration Judge ("IJ") of her application for asylum, withholding of removal, and relief under the U.N. Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. §1252. We will deny the Petition for Review.

I.

In the affidavit she submitted with her application, and at her March 17, 2003

hearing before the IJ, Ms. Ayefou testified to the following:

In her native Togo she was a store owner, and a member of (and later local coordinator for) an opposition political party known as the Union of Forces for Change ("UFC"). Her husband was the General Secretary of the ruling political party, the Rally of the Togolese People ("RTP"), and was not aware of Ms. Ayefou's work with the UFC. When, on March 25, 1999, Ms. Ayefou's husband learned of his wife's work with the UFC, he beat her in front of their children.

Ms. Ayefou was hospitalized for three days after the beating. During this time, Ms. Ayefou's parents tried to see their grandchildren, but her husband forbid it, telling them that their grandchildren no longer "belonged to" Ms. Ayefou. When she was discharged from the hospital, Ms. Ayefou was not able to locate either her husband or her children. She reported her beating and the disappearance of her children to the police, but they did nothing.

In February or April of 1999 or 2000 (the record contains conflicting information), Ms. Ayefou was served with an arrest warrant at her store. She went with the server to the police precinct, where she was questioned about a meeting/demonstration in which she had participated, beaten for approximately two minutes, and held for three days with two other women (also UFC members) in an extremely small cell.

No formal charges were brought against Ms. Ayefou. Before she was released from custody, however, the police informed her that they might call her back to the

precinct. Ms. Ayefou believed her husband, because of his influence in the RPT, was behind her arrest and detention. Upon her release, she went into hiding.

About two weeks later a second warrant for Ms. Ayefou's arrest was served on her brother, who delivered the warrant to Ms. Ayefou in hiding on April 18, 1999 (or 2000). The warrant instructed her to report to the police precinct, but instead Ms. Ayefou fled to a village. She believed her life was in danger, so she made the decision to leave Togo.

Ms. Ayefou obtained a passport through the brother of a friend who worked at the passport office. With the help of her church pastor, she then applied for and was granted a B-1 visa to travel to the United States in order to attend a commercial expo in New York. She left Togo on December 6, 2000, traveled to Ghana by foot, and from there flew to the United States. Ms. Ayefou entered the United States on December 8, 2000 with authorization to remain in the country until March 7, 2001. She remained beyond the authorized date.

Ms. Ayefou filed an application for asylum in November 2001, claiming she had suffered persecution in Togo on account of her political opinion, and that she feared future persecution on the same basis should she be returned to that country. The INS Asylum Office found Ms. Ayefou not credible, and referred her application to the Immigration Court. The INS commenced removal proceedings against her on April 1, 2002. She conceded removability, but renewed her request for asylum,[2] and indicated

---

[2] An application for asylum is deemed to include an application for withholding of removal. 8 C.F.R. §1208.3(b).

that she would also be seeking protection under the CAT and voluntary departure.

On March 20, 2003, the IJ granted Ms. Ayefou voluntary departure but, finding her not credible on several important points, denied her other applications. The IJ believed Ms. Ayefou's testimony that her husband took her children and refused to allow her parents to have any contact with them. On the other material issues about which Ms. Ayefou testified, however, the IJ found her not credible.

For example, the IJ did not believe that Ms. Ayefou was an active member of the UFC because her description of both that party and the RPT was vague and characterized by generalities. The IJ noted that Ms. Ayefou could have obtained a letter from a UFC member confirming her membership in the party, but did not. What few documents Ms. Ayefou did submit to the court to demonstrate that she was affiliated with the UFC – a blank membership booklet and a newspaper article that did not mention Ms. Ayefou specifically – did not corroborate her contention to the IJ's satisfaction.

Moreover, the IJ found it suspicious that Ms. Ayefou was able to come out of hiding and obtain a passport and visa to travel to the United States without being apprehended by a government that was supposedly pursuing her. The IJ was also troubled by the fact that Ms. Ayefou's passport contained a January 2001 date stamp, though she arrived in the country on December 8, 2000.

Ms. Ayefou appealed the IJ's ruling, and the BIA affirmed on July 30, 2004. It agreed with the IJ's adverse credibility determination, but also stated that Ms. Ayefou's

application foundered on the additional ground that the incidents she allegedly endured were not so severe as to warrant a finding of past persecution. This timely appeal followed.

## II.

Where, as here, the BIA substantially relies on an IJ's adverse credibility determination, we review the IJ's opinion as well as the BIA's opinion. *He Chun Chen v. Ashcroft*, 357 F.3d 215, 222 (3d Cir. 2004). Asylum applicants have the burden of supporting their claims with credible testimony. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (*citing Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001)). "Because an applicant's testimony may alone be sufficient to meet his burden if it is found credible, 8 C.F.R. § 208.13(a), where the applicant is the only testifying witness, much depends on what the applicant says and how he says it. Consequently, the IJ's evaluation of the applicant and his testimony, generally referred to as a 'credibility determination,' is of paramount importance, and, given that the IJ has the opportunity to observe the applicant as he gives his testimony and is experienced in the work entrusted to the agency, the IJ's evaluation is typically given great deference by an appellate court reviewing a cold record on any subsequent appeal." *Jishiashvili v. Attorney General of the U.S.*, 402 F.3d 386, 392 (3d Cir. 2005). An adverse credibility determination is a finding of fact, and "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. §1252(b)(4)(B). *See also Dia v.*

*Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003).

III.

After close review of the record, we find that substantial evidence supports the IJ's determination – adopted by the BIA – that Ms. Ayefou was not credible on several of the issues that go to the heart of her application. We acknowledge the sense of some of Ms. Ayefou's arguments on appeal, particularly the argument that she relied on the help of an "insider" – a friend's brother who worked at the passport office – to obtain her passport, so the fact that she obtained that passport without being seized by government officials is perhaps less incredible than the IJ seemed to think. Nevertheless, we cannot say that "any reasonable adjudicator would be compelled to conclude" that Ms. Ayefou was credible based on the record before us. We will thus affirm the denial of Ms. Ayefou's application, and deny the Petition for Review.

Because we deny the Petition for Review on the basis of the IJ's adverse credibility determination, we need not express an opinion on the independent basis for denial the BIA raised, i.e., that the incidents Ms. Ayefou suffered do not rise to the level of "persecution."